**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------X
                              :
ANTHONY TORRES                :    Civil No. 3:22CV00883(SALM)
                              :
v.                            :
                              :
STATE OF CONNECTICUT OFFICE   :
OF ADULT PROBATION; STATE OF  :
CONNECTICUT OFFICE OF THE     :
CHIEF CLERK ADMINISTRATOR;    :
THE CONNECTION, INC.; NICOLE  :
GRELLA; COURTNEY RING;        :
CAITLIN HIRSCH; MICHAEL       :
SULLIVAN; and JOHN DOES 1-25  :    January 19, 2023
                              :
------------------------------X
```

<u>**INITIAL REVIEW ORDER OF AMENDED COMPLAINT [Doc. #46]**</u>

Plaintiff Anthony Torres ("plaintiff") originally brought this action <u>in forma pauperis</u> as a self-represented party. <u>See</u> Docs. #1, #11. He is now represented by <u>pro bono</u> counsel and proceeds on an Amended Complaint asserting claims pursuant to 42 U.S.C. §1983 against the following defendants: State of Connecticut Office of Adult Probation; State of Connecticut Office of the Chief Clerk Administrator; The Connection, Inc.; Nicole Grella; Courtney Ring; Caitlin Hirsch; Michael Sullivan; and John Does 1-25. <u>See generally</u> Doc. #46.[1] For the reasons set

_____

[1] Plaintiff originally filed the Amended Complaint without the referenced exhibits on November 21, 2022. <u>See</u> Doc. #43. On November 22, 2022, the Court ordered plaintiff to "file the referenced exhibits forthwith, and in any event, no later than

forth below, the Amended Complaint is **DISMISSED, in part**,

pursuant to 28 U.S.C. §1915(e)(2)(b)(ii)-(iii).[2]

## I.   LEGAL STANDARD

The determination of whether an in forma pauperis plaintiff

should be permitted to proceed under 28 U.S.C. §1915 involves

two separate considerations. The Court must first determine

whether plaintiff may proceed with the action without prepaying

the filing fee in full. See 28 U.S.C. §1915(a). The Court has

already addressed that issue. See Doc. #11. Second, section 1915

provides that "the court shall dismiss the case at any time if

---

November 29, 2022." Doc. #44 (emphasis removed). On November 28,
2022, plaintiff filed the Amended Complaint along with the
exhibits. See Doc. #46. All references to the Amended Complaint
refer to the document filed at docket entry number 46.

[2] The gravamen of the Amended Complaint is that plaintiff's
conditions of probation are subjecting him "to involuntary
confinement" such that he "has been held against his free
will[]" at the January Center. Doc. #46 at 5, ¶27. It is unclear
whether plaintiff is a "prisoner" requiring the application of
28 U.S.C. §1915A. See 28 U.S.C. §1915A(a). However, because
plaintiff proceeds in forma pauperis, see Doc. #11, whether to
apply section 1915 or section 1915A is largely a distinction
without a difference because the Court may conduct an initial
review of the Amended Complaint under either provision. Because
plaintiff's confinement status is unclear, the Court applies 28
U.S.C. §1915 to the initial review of the Amended Complaint.
See, e.g., Awad v. Sierra Pre-Trial, No. 3:18CV01506(JAM), 2019
WL 2437853, at *2 (D. Conn. June 11, 2019) (Court did not reach
the issue of "whether the initial review requirement of §1915A
extends to a plaintiff who was imprisoned at the time that he
filed his complaint but who no longer remains in prison[,]"
because plaintiff was "proceeding in forma pauperis," and
therefore, "his complaint is alternatively subject to review
pursuant to 28 U.S.C. §1915(e)(2)(B).").

the court determines that" the case "fails to state a claim on which relief may be granted[,] or ... seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B)(ii)-(iii). In a case such as this one, "[a] district court retains the authority — and indeed the duty — to sua sponte review the pleading sufficiency of [an] amended complaint." Praileau v. Fischer, 930 F. Supp. 2d 383, 389 (N.D.N.Y. 2013).

Although detailed allegations are not required, a complaint must include sufficient facts to afford a defendant fair notice of the claims and demonstrate a right to relief. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.  ALLEGATIONS OF THE AMENDED COMPLAINT

The Court accepts the well-pleaded allegations of the Amended Complaint [Doc. #46] as true for purposes of this initial review.

On June 18, 1998, plaintiff was sentenced by the Connecticut Superior Court to a 30-year period of incarceration, to be followed by 35 years of probation. See Doc. #46 at 3, ¶13; id. at 5, ¶21; see also Doc. #46-1 at 2. The Superior Court "set certain conditions of such probation." Doc. #46 at 5, ¶21; see

3

also Doc. #46-1 at 2. The standard and special conditions of probation imposed did not require "the imposition of any continuation of confinement after the completion of [plaintiff's] period of incarceration." Doc. #46 at 5, ¶¶23-24. Nor did "[t]he sentence imposed ... by the Superior Court ... include any residential restrictions upon the completion of" plaintiff's incarceration. Id. at 11, ¶60. "The sentencing court did not mandate that [plaintiff] reside in a residential community or halfway house after his term of incarceration." Id. at 14, ¶71.[3]

Defendant Nicole Grella ("Grella") is an Adult Probation Officer, employed by either the State of Connecticut Office of Adult Probation or the State of Connecticut Office of the Chief Clerk Administrator. See id. at 2, ¶5. "On or about December 10, 2021," Grella held a videoconference with plaintiff, at which time Grella informed plaintiff of his conditions of probation. Id. at 4, ¶17. "Those conditions were onerous and shocked Torres because they were considerably more restrictive than what Torres remembered from his sentencing." Id.

Defendant The Connection, Inc. ("The Connection") "owns and operates" a facility called the "January Center." Id. at 2, ¶4.

---

[3] The Superior Court sentence did, however, direct plaintiff "to submit to a form of sexual offender treatment as an element of his probation[.]" Id. at 8, ¶45.

The Connection "is a party to a contract with the State of Connecticut to, inter alia, house sex offenders at" the January Center following the completion of their prison sentences. Doc. #46 at 4, ¶19. The January Center is "completely surrounded by barbed wire." Id. at 7, ¶36. Individuals housed at the January Center "are prohibited from leaving the property to engage in unaccompanied activities[.]" Id. at 7, ¶38. The "January Center limits the reading materials ... and ... the television programming" of those housed in the facility, id. at 7, ¶41, and also limits the occupants' "computer access[.]" Id. at 8, ¶43.

During a June 2022 conference with Grella, plaintiff "learned that he would be transferred to January Center following the completion of his DOC incarceration[,]" and that if he "resisted" the transfer, he would be "arrested[.]" Id. at 4, ¶18. On June 15, 2022, after plaintiff's period of incarceration ended, the State of Connecticut Office of Adult Probation escorted plaintiff, in handcuffs, to the January Center. See id. at 4, ¶20.[4] Since plaintiff's transfer to the January Center, where he currently remains, plaintiff "has been subject to involuntary confinement and has been held against his

---

[4] Plaintiff "served the entire period of incarceration to which he had been sentenced[.]" Doc. #46 at 4, ¶15.

free will, and under duress." Doc. #46 at 5, ¶27. Defendant Courtney Ring, the director of the January Center, "told [plaintiff] that he would need to forfeit his right to privacy before he would be permitted to leave January Center." Id. at 6, ¶33. Plaintiff has not been told how long he will be required to reside at the January Center. See id. at 7, ¶34.

While housed at the January Center, plaintiff has been subjected to "the oft-repeated threat by Defendants that any action by [plaintiff] that could be considered by them to be inconsistent with involuntary confinement (e.g., leaving the premises) would be considered a violation of probation ('VOP')[,]" which "would result in [plaintiff's] immediate arrest and return to prison." Id. at 6, ¶31; see also id. at 7, ¶37. What may be considered a VOP is "ill-defined[.]" Id. at 6, ¶32. Plaintiff's probation officer while housed at the January Center, Michael Sullivan ("Sullivan"), "without good or probable cause, ... repeatedly has threatened Torres with VOP charges, arrest and a return to prison." Id. at 9, ¶49.

The January Center's "staff has imposed, as a specific condition of [plaintiff's] release from confinement, that he submit to therapy sessions in which he would be required to confess to having engaged in conduct that he has long denied conducting." Doc. #46 at 8, ¶44. Plaintiff alleges: "Any refusal

by Torres to provide information demanded by January Center is considered by the staff, as communicated by at least Ring and Caitlin, to be equivalent to a refusal to complete programs of treatment and has been used as an excuse and pretext to maintain the status of Torres' involuntary confinement indefinitely." Id. at 9, ¶47.[5] In November 2022, plaintiff learned "that he would continue to be held indefinitely at January Center." Id. at 12, ¶65.

"Defendants" have given plaintiff "a number of documents concerning the conditions of probation to which [plaintiff] would be subjected. Such conditions were not included or otherwise presented to [plaintiff] at the time of his sentencing in 1998[,]" id. at 12, ¶67,[6] and "are more onerous" and "more restrictive" than the conditions of probation included in the sentence the Superior Court imposed[.]" Id. at 12-13, ¶¶68-69; see also id. at 13, ¶70.

---

[5] Defendant Courtney Ring ("Ring") is employed by The Connection as the director of the January Center. See Doc. #46 at 2, ¶6. Defendant Caitlin Hirsch ("Hirsch") is employed by The Connection as a "clinical officer" at the January Center. Id. at 2, ¶7.

[6] Some of the conditions of confinement to which plaintiff objects appear to have been signed by defendant Grella. See, e.g., Doc. #46-2 at 2; Doc. #46-5 at 2; Doc. #46-7 at 2.

Plaintiff seeks monetary, injunctive, and declaratory relief. See id. at 15, ¶¶a-e.[7]

## III. DISCUSSION

The Amended Complaint asserts three counts, but in substance advances only two substantive claims pursuant to 42 U.S.C. §1983. See Doc. #46 at 14-15.[8] Plaintiff does not allege that defendants have violated any specific constitutional amendment. Instead, plaintiff asserts that the actions of defendants, by confining plaintiff "without legal authority[,]" have violated plaintiff's "Constitutional rights[,]" Id. at 14, ¶¶76-77, and that "[t]he conditions of release imposed by Defendants violate [plaintiff's] Constitutional due process rights." Id. at 15, ¶79.

The Court construes the first count as asserting a claim for an Eighth Amendment violation. See Hurd v. Fredenburgh, 984 F.3d 1075, 1085 (2d Cir.) (An "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a

---

[7] Plaintiff does not seek an order releasing him from the January Center. To the extent plaintiff alleges that he is in custody, any "request for release must be asserted in a petition for writ of habeas corpus. It is not cognizable in a section 1983 action." Martin v. Mejias, No. 3:19CV01101(KAD), 2019 WL 3457237, at *1 (D. Conn. July 31, 2019).

[8] Count III appears to set forth only the statutory vehicle pursuant to which plaintiff brings his claims, 42 U.S.C. §1983. See Doc. #46 at 15, ¶¶80-81. It contains no substantive allegations.

harm of constitutional magnitude under the first prong of the
Eighth Amendment analysis." (footnote omitted)), <u>cert. denied</u>,
142 S. Ct. 109 (2021).[9] The Court construes the second count as
asserting a claim for a Fourteenth Amendment procedural due
process violation. The Court next turns to a review of the
Amended Complaint's allegations.[10]

---

[9] At this stage, the Court does not construe the Amended
Complaint as asserting a claim for false imprisonment. "To state
[a] valid claim[] for ... false imprisonment[]" plaintiff "must
... 'plead an unreasonable deprivation of liberty in violation
of the Fourth Amendment and satisfy the state law elements of
the underlying claims.'" <u>Chapdelaine v. Desjardin</u>, No.
3:20CV00779(MPS), 2022 WL 4448890, at *4 (D. Conn. Sept. 23,
2022) (quoting <u>Walker v. Sankhi</u>, 494 F. App'x 140, 142 (2d Cir.
2012)). A Fourth Amendment claim for false imprisonment does not
appear apt here, particularly because "[t]o succeed on a ...
false imprisonment claim, the underlying charges must have been
terminated in the plaintiff's favor." <u>Id.</u> It is unclear how
plaintiff would plead that element.

[10] On September 13, 2022, the Court entered an Order to Show
Cause directing the Office of Adult Probation, through counsel,
to "appear before the Court, ... and respond to the allegation
that by virtue of plaintiff's conditions of probation, plaintiff
is being unlawfully detained." Doc. #26 at 1-2. On October 5,
2022, the Court held a Show Cause hearing at which counsel for
the Office of Adult Probation appeared. <u>See</u> Doc. #37. In her
attempt to explain the basis for plaintiff's confinement,
counsel relied, in part, on Connecticut General Statutes section
53a-30(b). That statute states: "When a defendant has been
sentenced to a period of probation, the Court Support Services
Division may require that the defendant comply with any or all
conditions which the court could have imposed under subsection
(a) of this section which are not inconsistent with any
condition actually imposed by the court." Conn. Gen. Stat. §53a-
30(b). The Amended Complaint does not make a facial challenge to
that statute.

A.  <u>State Agency Defendants</u>

Plaintiff names as defendants two state agencies: (1) the State of Connecticut Office of Adult Probation ("CSSD") and (2) the Connecticut Office of the Chief Clerk Administrator ("CCCA").[11]

Section 1983 "creates a federal cause of action against any person who, under color of state law, deprives a citizen or a person within the jurisdiction of the United States of any right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Montero v. Travis</u>, 171 F.3d 757, 760 (2d Cir. 1999). "It is well established that state agencies ... may not be sued under §1983 for money damages." <u>Torres v. Carry</u>, 704 F. Supp. 2d 294, 295 (S.D.N.Y. 2010); <u>see, e.g.</u>, <u>Fowler v. City of Stamford</u>, No. 3:18CV01498(JAM), 2019 WL 188695, at *2 (D. Conn. Jan. 14, 2019) ("The CSSD is a state entity that is part of the Connecticut Judicial Branch. A state entity, such as the CSSD, is not a person subject to a suit for money damages under §1983.").

The Eleventh Amendment also bars plaintiff's claims against the state agency defendants:

> [T]he Eleventh Amendment of the United States Constitution renders "an unconsenting State [ ] immune from suits brought in federal courts by her own citizens

---

[11] The CSSD and CCCA are sometimes collectively referred to herein as the "state agency defendants."

> as well as by citizens of another state" and "in the
> absence of consent a suit in which the State or one of
> its agencies or departments is named as the defendant is
> proscribed by the Eleventh Amendment. ... This
> jurisdictional bar applies regardless of the nature of
> the relief sought." <u>Pennhurst State School & Hosp. v.
> Halderman</u>, 465 U.S. 89, 100 (1984).!

<u>Off. of Consumer Couns. v. S. New Eng. Tel. Co.</u>, 502 F. Supp. 2d

277, 291 (D. Conn. 2007) (emphases removed). Although plaintiff

seeks prospective injunctive relief against the state agency

defendants, the doctrine of <u>Ex Parte Young</u>, 209 U.S. 123 (1908),

does not save those claims. "<u>Young</u> only permits claims for

[injunctive] relief advanced against state officials, but not

against states themselves or their agencies." <u>Off. of Consumer

Couns.</u>, 502 F. Supp. 2d at 291; <u>see also Santiago v. N.Y. State

Dep't of Corr. Servs.</u>, 945 F.2d 25, 32 (2d Cir. 1991) ("[A]

plaintiff seeking prospective relief from the state must name as

defendant a state official rather than the state or a state

agency directly, even though in reality the suit is against the

state and any funds required to be expended by an award of

prospective relief will come from the state's treasury.").

Accordingly, all claims against the CCSD and CCCA are

**DISMISSED, with prejudice.**

B.   <u>Official Capacity Claims for Money Damages</u>

Any claims for money damages against the individual

defendants (Grella, Sullivan, Hirsch, Ring), who are state

11

employees (or employees of a corporation alleged to be acting as an arm of the state), in their official capacities, are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Section 1983 does not abrogate state sovereign immunity. Nor has [plaintiff] alleged any facts suggesting that the state has waived immunity in this case." Kerr v. Cook, No. 3:21CV00093(KAD), 2021 WL 765023, at *5 (D. Conn. Feb. 26, 2021) (citation omitted). Accordingly, all claims for money damages against defendants Grella, Sullivan, Hirsch, and Ring in their official capacities are **DISMISSED, with prejudice.**

C.    John Doe Defendants

Plaintiff names "John Does 1-25" as defendants, and alleges that these defendants "are employed in various capacities by CSSD, CCCA, and The Connection, Inc. and who engaged in acts that had the purpose and effect of obstructing and violating [plaintiff's] rights." Doc. #46 at 3, ¶9.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation and quotation marks omitted). Thus, "[a] plaintiff must plead that each Government-official defendant, through the official's own

12

individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

The allegations of the Second Amended Complaint largely refer to "Defendants" and fail to specifically identify which defendant participated in the alleged constitutional violation. Indeed, the Second Amended Complaint makes no substantive allegations against the John Doe defendants. See generally Doc. #46. Accordingly, all claims against John Does 1-25 are **DISMISSED, without prejudice**, for lack of personal involvement.

D.   The Connection

Plaintiff names as a defendant The Connection, which "owns and operates" the January Center. Doc. #46 at 2, ¶4.! "The Connection, Inc. is a private corporation contracted by the State of Connecticut to provide specialized, community-based sex offender treatment and sexual abuse evaluation programs at various locations throughout the State." Parkman v. O'Connor, No. 3:18CV01358(KAD), 2020 WL 4284485, at *2 n.3 (D. Conn. July 27, 2020) (citation and quotation marks omitted); see also State v. Corringham, 110 A.3d 535, 539 (Conn. App. 2015) (The January Center is "a facility for the housing and treatment of convicted sex offenders.").

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) (citation and quotation marks omitted). The Second Circuit has explained:

> A private entity acts under color of state law for purposes of §1983 when "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." Hogan v. A.O. Fox Memorial Hosp., 346 F. App'x 627, 629 (2d Cir. 2009) (citing Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).

McGugan v. Aldana-Bernier, 752 F.3d 224, 229 (2d Cir. 2014).

Plaintiff alleges:

> The Connection, Inc. is party to a contract with the State of Connecticut to, inter alia, house sex offenders at January Center upon their release from prison following the completion of their prison sentences. By virtue of such contract, at least for the purposes the issues addressed herein, The Connection, Inc. operates as an instrumentality of the State of Connecticut and under color of state law.

Doc. #46 at 4, ¶19. Plaintiff alleges that January Center staff members monitor his activities in a manner that makes them functionally equivalent to probation or parole officers. For example, the January Center staff monitors plaintiff's reading

materials and television programs. See id. at 7, ¶¶40-41. The
January Center staff restricts and/or prohibits plaintiff's
movement. See id. at 4, ¶38. Plaintiff also alleges that January
Center staff members have threatened him with violations of
probation should plaintiff, among other things, leave the
property. See id. at 6, ¶¶31-32; id. at 7, ¶37; id. at 10, ¶¶53,
55.

At this stage, under any of the three tests articulated in
McGugan, the allegations of the Amended Complaint are sufficient
to plausibly allege that the Connection "acts under color of
state law for purposes of §1983[.]" McGugan, 752 F.3d at 229.

First, it is reasonable to infer from the allegations of
the Amended Complaint that, pursuant to the contract between the
State and The Connection, the State has "compelled the conduct"
of the January Center employees, which plaintiff now challenges.
Id.

Second, "there is a sufficiently close nexus between the
State" and the conduct of the January Center employees with
which plaintiff takes issue. Id. The allegations of the Amended
Complaint suggest that Adult Probation Officers work with
employees of the January Center to monitor the persons housed at
that facility, and to otherwise enforce the conditions of

probation to which those individuals may be subjected. <u>See,</u>
<u>e.g.,</u> Doc. #46 at 8, ¶45; <u>id.</u> at 10, ¶53.

Finally, the State has delegated to The Connection, via the
January Center, "the inherently public function of monitoring
registered sex offenders[]" who are on probation. <u>Jones v. Cnty.</u>
<u>of Suffolk</u>, 164 F. Supp. 3d 388, 396 (E.D.N.Y. 2016).[12] Further,
the allegations of the Amended Complaint suggest that the
January Center essentially continues the incarceration of
convicted sex offenders, which is a function traditionally
reserved for the state. <u>See, e.g.</u>, <u>Skelton v. Pri-Cor, Inc.</u>, 963
F.2d 100, 102 (6th Cir. 1991) ("As a detention center, Pri-Cor
[a private corporation] is no doubt performing a public function
traditionally reserved to the state.").

The allegations of the Amended Complaint do not simply
allege that the January Center provides counseling and
therapeutic services. <u>Contra</u> <u>Colliton v. Bunt</u>, No.
15CV06580(CS), 2016 WL 7443171, at *7 (S.D.N.Y. Dec. 27, 2016)
("Plaintiff has failed to allege that Bunt, in providing sex
offender treatment to Plaintiff, was exercising powers that are

---

[12] "The January Center is the state's only in-patient treatment
program for sex offenders. ... The January Center is the most
intensive treatment program offered and it has a total of
twenty-four beds. Twelve beds are for probationers and twelve
beds are for individuals on parole." <u>State v. Rivera</u>, No. FBT-
CR-09-0241668-T, 2019 WL 4733606, at *1 (Conn. Super. Ct. Aug.
28, 2019).

traditionally the exclusive prerogative of the state, and thus has not plausibly alleged that the public function test is met." (citation and quotation marks omitted)). Rather, the Amended Complaint alleges that the January Center employees have "exercised power possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law." Fabrikant, 691 F.3d at 209 (citation and quotation marks omitted) (alterations added). Accordingly, plaintiff has adequately alleged that The Connection, and its employees at the January Center, are state actors for purposes of this action.

"[A] private corporation" cannot "be held vicariously liable under §1983 for the actions of its employees." Mejia v. City of N.Y., 228 F. Supp. 2d 234, 243 (E.D.N.Y. 2002); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990). Nevertheless, "[u]sing the Monell [v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978),] standard, the liability of a municipal corporation, or, in this case, a private corporation, may be established in a number of ways." Bowen v. Rubin, 385 F. Supp. 2d 168, 177 (E.D.N.Y. 2005). For example, a "private corporation[]" "may be found liable for a section §1983 violation where the [private corporation] itself causes the constitutional violation in question[,]" or where "an actual official policy" of the corporation "led to" plaintiff's

"alleged constitutional deprivations[.]" <u>Mejia</u>, 228 F. Supp. 2d at 243 (citation and quotation marks omitted) (alterations added).

Construed generously, the Amended Complaint appears to allege that The Connection, through the January Center, maintains official policies that have led to plaintiff's unlawful confinement. Accordingly, at this stage of the proceedings, and as further discussed below, the Court will permit the Eighth Amendment claim against The Connection for money damages to proceed for further development of the record.

E.    <u>Eighth Amendment Violation</u>

Plaintiff alleges that defendants have kept him "confined without legal authority" following the end of his legally authorized term of incarceration. Doc. #46 at 14, ¶76.

"The Eighth Amendment prohibits the unnecessary and wanton infliction of pain, including punishments that are totally without penological justification." <u>Hurd</u>, 984 F.3d at 1085 (citation and quotation marks omitted). "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. §1983 must meet two requirements. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind."

<u>Francis v. Fiacco</u>, 942 F.3d 126, 150 (2d Cir. 2019) (citations and quotation marks omitted).

"To satisfy the first requirement, a plaintiff must plead a harm of a magnitude that violates a person's eighth amendment rights." <u>Hurd</u>, 984 F.3d at 1084 (citation and quotation marks omitted). Here, plaintiff has adequately alleged this first, objective, requirement because "[t]here is no penological justification for incarceration beyond a mandatory release date because any deterrent and retributive purposes served by [plaintiff's] time in jail were fulfilled as of that date." <u>Id.</u> at 1085 (citation and quotation marks omitted) (alterations added). Thus, "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis." <u>Id.</u> (footnote omitted).

As to the second, subjective, requirement, "an Eighth Amendment violation typically requires a state of mind that is the equivalent of criminal recklessness. This standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability." <u>Francis</u>, 942 F.3d at 150 (citations and quotation marks omitted). "Under this standard, prison officials can be found deliberately indifferent to their own clerical errors on

19

the basis of their refusals to investigate well-founded complaints regarding these errors." Hurd, 984 F.3d at 1084-85 (citation and quotation marks omitted).

At this stage, it is not clear whether defendants' actions rise to the level of "criminal recklessness[,]" Francis, 942 F.3d at 150, but the allegations are sufficient to support a claim that defendants deliberately inflicted punishment on plaintiff. See Hurd, 984 F.3d at 1084-85. Accordingly, the Court will permit plaintiff's Eighth Amendment claim to proceed for further development of the record against The Connection, and defendants Grella, Sullivan, Hirsch, and Ring, in their individual capacities for damages.[13]

F.   Procedural Due Process Violation

Plaintiff asserts: "The conditions of release imposed by Defendants violate Torres' Constitutional due process rights." Doc. #46 at 15, ¶79. The Court construes this as asserting a claim for a procedural due process violation.

---

[13] Given the uncertainty of plaintiff's confinement status, the Fourth or Fourteenth Amendment might also plausibly apply to plaintiff's allegations. The law applicable to claims brought pursuant to those amendments is even more generous than that applicable to Eighth Amendment claims. Thus, even if the Eighth Amendment is not applicable because plaintiff is no longer subject to a legal term of incarceration, the Court would nevertheless permit this claim to proceed under the Fourth or Fourteenth Amendment.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012). The allegations of the Amended Complaint allege facts sufficient to state a procedural due process claim against the Adult Probation Officer defendants Grella and Sullivan in their individual capacities for damages, and will be permitted to proceed for further development of the record. The procedural due process claim is **DISMISSED, without prejudice,** for failure to state a claim as to Ring, Hirsch, and The Connection, because these defendants are not alleged to have been involved with the imposition of the probation conditions challenged by plaintiff.

G.   Injunctive and Declaratory Relief

Plaintiff seeks declaratory and injunctive relief. See Doc. #46 at 15, ¶¶c-d.

To the extent that plaintiff seeks injunctive relief against defendants Grella, Sullivan, Hirsch, and Ring in their individual capacities, plaintiff "cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities." Kuck v.

21

Danaher, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); see also Patterson v. Lichtenstein, No. 3:18CV02130(MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020) ("Injunctive relief is not available from defendants in their individual capacities[.]"). Accordingly, plaintiff's requests for injunctive relief against these defendants in their individual capacities are **DISMISSED, with prejudice.**

The Court will permit plaintiff's requests for injunctive and declaratory relief against The Connection and the defendants in their official capacities to proceed at this time.

IV. **CONCLUSION AND ORDERS**

Having accepted as true all allegations in the Amended Complaint, the Court finds that this case may proceed to service of process on the claims for **(1)** the Eighth Amendment violation against defendants **The Connection, and Grella, Sullivan, Hirsch, and Ring,** in their individual capacities for money damages; and **(2)** the Fourteenth Amendment due process violation against defendants **Grella and Sullivan** in their individual capacities for money damages. The Court will also permit plaintiff to proceed on his claims for injunctive and declaratory relief against the Connection, and against defendants Grella, Sullivan, Hirsch, and Ring in their official capacities.

All claims asserted against CSSD and CCCA, are **DISMISSED, with prejudice.**

22

All claims asserted against the individual defendants in their official capacities for money damages are **DISMISSED, with prejudice.**

All claims asserted against the John Doe defendants are **DISMISSED, without prejudice.**

All claims for injunctive relief against defendants in their individual capacities are **DISMISSED, with prejudice.**

**Plaintiff may respond to this Order in one of two ways:**

**OPTION 1:** Plaintiff may proceed **immediately** to service on **The Connection, Grella, Sullivan, Hirsch, and Ring**, on the claims permitted to proceed by this IRO. If plaintiff selects this option, he shall file a Notice on the docket on or before **February 9, 2023,** informing the Court that he elects to proceed with service as to these defendants. The Court will then immediately begin the effort to serve process on defendants The Connection, Grella, Sullivan, Hirsch, and Ring.

**Or, in the alternative:**

**OPTION 2:** Plaintiff may file a Second Amended Complaint, addressing the deficiencies identified in this Order. Any Second Amended Complaint will <u>completely</u> replace the prior complaint in the action. No portion of the original Complaint [Doc. #1], or the Amended Complaint [Doc. #46], will be incorporated into the Second Amended Complaint by reference, or considered by the

23

Court.

Any such Second Amended Complaint must be filed by **February 9, 2023. The Amended Complaint will not be served on any defendant and will have no effect if a Second Amended Complaint is filed.**

If a Second Amended Complaint is filed, the Court will review it pursuant to 28 U.S.C. §1915 to determine whether it is sufficient to proceed to service on any defendant.

It is so ordered at Bridgeport, Connecticut, this 19th day of January, 2023.

_____/s/_____
Hon. Sarah A. L. Merriam
United States Circuit Judge
Sitting by Designation

24