UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
ANTHONY TORRES                :    Civil No. 3:22CV00883(SALM)
                              :
v.                            :
                              :
THE CONNECTION, INC.; NICOLE  :
GRELLA; COURTNEY RING;        :
CAITLIN HIRSCH; MICHAEL       :
SULLIVAN; SARAH RICHARDSON;   :
MARY E. ROPER; BRIANNA        :
WISNIEWSKI; and JOHN DOES 1-25:    March 13, 2023
                              :
------------------------------X
```

## INITIAL REVIEW ORDER OF SECOND AMENDED COMPLAINT [Doc. #56]

Plaintiff Anthony Torres ("plaintiff") originally brought this action in forma pauperis as a self-represented party. See Docs. #1, #11. He is now represented by pro bono counsel. Plaintiff, through counsel, filed an Amended Complaint asserting claims pursuant to 42 U.S.C. §1983 against the following defendants: State of Connecticut Office of Adult Probation ("CSSD"); State of Connecticut Office of the Chief Clerk Administrator ("CCCA"); The Connection, Inc.; Nicole Grella ("Grella"); Courtney Ring ("Ring"); Caitlin Hirsch ("Hirsch"); Michael Sullivan ("Sullivan"); and John Does 1-25. See Doc. #46.

On January 19, 2023, the Court issued an Initial Review

Order of the Amended Complaint ("original IRO"). <u>See</u> Doc. #47.[1]
The original IRO construed the Amended Complaint as asserting a
claim for an Eighth Amendment violation and a claim for a
Fourteenth Amendment procedural due process violation, both
bought pursuant to 42 U.S.C. §1983. <u>See</u> <u>id.</u> at 8-9.

The original IRO permitted plaintiff to proceed to service
of process on his claims for (1) an Eighth Amendment violation
against The Connection, and Grella, Sullivan, Hirsch, and Ring,
in their individual capacities for money damages; and (2) a
Fourteenth Amendment due process violation against Grella and
Sullivan in their individual capacities for money damages. <u>See</u>
<u>id.</u> at 22. The original IRO also permitted plaintiff to proceed
on his claims for injunctive and declaratory relief against The
Connection, and against defendants Grella, Sullivan, Hirsch, and
Ring in their official capacities. <u>See</u> <u>id.</u> at 23. The original
IRO dismissed all claims asserted against the CSSD and CCCA,
with prejudice. <u>See</u> <u>id.</u> at 10-11, 22. The original IRO also
dismissed, with prejudice, all claims asserted against the
individual defendants in their official capacities for money
damages, and all claims for injunctive relief asserted against

---

[1] Because plaintiff proceeds <u>in</u> <u>forma</u> <u>pauperis</u>, <u>see</u> Doc. #11, the
Court applied 28 U.S.C. §1915 to the initial review of the
Amended Complaint. <u>See</u> Doc. #47 at 2 n.2. Here too, the Court
applies section 1915 to the initial review of the Second Amended
Complaint.

defendants in their individual capacities. See Doc. #47 at 23. The original IRO dismissed all claims against the John Doe defendants without prejudice because the Amended Complaint failed to allege their personal involvement in the alleged constitutional violations. See id.

The Court permitted plaintiff to respond to the original IRO in one of two ways. See id. at 23-24. Plaintiff could proceed immediately to service on The Connection, Grella, Sullivan, Hirsch, and Ring, on the claims permitted to proceed by the original IRO, or plaintiff could file a Second Amended Complaint. See id.

Plaintiff filed a Second Amended Complaint ("SAC") on February 21, 2023. See Doc. #56. The SAC names nine defendants: The Connection; Grella; Ring; Hirsch; Sullivan; Sarah Richardson ("Richardson");[2] Mary E. Roper ("Roper");[3] Brianna Wisniewski ("Wisniewski");[4] and John Does 1-25 (collectively the "defendants"). See id. at 1-3. "The claims asserted against the individual defendants are being asserted against them in their

---

[2] Richardson "is or was employed as a case worker by The Connection, Inc. at January Center." Doc. #56 at 3, ¶9.

[3] Roper "is employed by The Connection, Inc. as a case worker at January Center." Id. at 3, ¶10.

[4] Wisniewski "is employed by The Connection, Inc., as a clinical therapist at January Center." Id. at 3, ¶11.

individual capacities." Id. at 3, ¶12. The SAC asserts six counts pursuant to 42 U.S.C. §1983. See generally id. at 16-19. Plaintiff seeks monetary damages, as well as injunctive and declaratory relief. See id. at 19.[5]

For the reasons set forth below, the SAC is **DISMISSED, in part,** pursuant to 28 U.S.C. §1915(e)(2)(b)(ii).

## I.   LEGAL STANDARD

Section 1915 provides that "the court shall dismiss the case at any time if the court determines that" the complaint "fails to state a claim on which relief may be granted[.]" 28 U.S.C. §1915(e)(2)(B)(ii). In a case such as this one, "[a] district court retains the authority — and indeed the duty — to sua sponte review the pleading sufficiency of [an] amended complaint." Praileau v. Fischer, 930 F. Supp. 2d 383, 389 (N.D.N.Y. 2013).

Although detailed allegations are not required, a complaint must include sufficient facts to afford a defendant fair notice of the claims and to demonstrate a right to relief. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is

---

[5] Exhibits attached the SAC include, inter alia, various documents related to the conditions of, or the purported conditions of, plaintiff's probation. See Doc. #56-1 through Doc. #56-10.

plausible on its face." Id. at 570. Conclusory allegations are
not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.  ALLEGATIONS OF THE SAC

The factual allegations in the SAC largely reiterate those
pled in the Amended Complaint. Compare generally Doc. #47, with
Doc. #56. The Court assumes familiarity with the factual
allegations of this matter and does not restate the factual
allegations of the SAC herein, except as necessary to the
Court's analysis. For purposes of this review, the Court assumes
the well-pleaded factual allegations set forth in the SAC to be
true and draws all reasonable inferences in plaintiff's favor.
See Iqbal, 556 U.S. at 678-79.

## III. DISCUSSION

The SAC asserts six claims pursuant to 42 U.S.C. §1983
against all defendants: (1) an Eighth Amendment violation
related to plaintiff's continued confinement at the January
Center (Count I), see Doc. #56 at 16-17; (2) a Fourteenth
Amendment due process violation related to the deprivation of
plaintiff's "liberty" (Count II), id. at 17, ¶95; (3) a
Fourteenth Amendment due process violation related to
plaintiff's "conditions of release imposed by Defendants" (Count
III), id. at 18, ¶99; (4) "a violation of [plaintiff's]
federally protected civil rights as set forth in 42 U.S.C.
§1983" related to plaintiff's "continued confinement ...,

5

together with the constant threat of a charge of [violation of probation] and re-arrest if [plaintiff] does not execute documents providing for a more stringent and restrictive period of probation than the one to which he had been sentenced[]" (Count IV), id. at 18, ¶102;[6] (5) a violation of plaintiff's "rights to privacy" in his confidential medical records (Count IV), id. at 19, ¶104; and (6) conspiracy to violate plaintiff's civil rights (Count VI), see id. at 19, ¶107.

The allegations of the SAC focus on the assertion that plaintiff's conditions of probation are subjecting him "to involuntary confinement" such that he "has been held against his free will[]" at the January Center. Doc. #56 at 6, ¶33. However, the SAC also appears to challenge the conditions of probation more generally. See, e.g., id. at 6, ¶¶28-29; id. at 14-15, ¶77 ("Imposing additional conditions long after his sentencing and in a way that is, as is the case with Torres, inconsistent with the actual conditions imposed by the Superior Court, constitutes an improper ex post facto punishment."); id. at 15-18, ¶¶78-82.

---

[6] "Section 1983 is not a separate source of rights but a vehicle to raise violations of federal or constitutional law." Davis v. N.Y.C. Dep't/Bd. of Educ., No. 14CV02281(KAM), 2015 WL 5772204, at *9 n.10 (E.D.N.Y. Sept. 29, 2015). The Court does not construe Count IV as asserting a claim separate from those asserted in the other counts of the SAC. Accordingly, Count IV is **DISMISSED, without prejudice.**

With that in mind, the Court next turns to a review of the SAC's allegations.

A.   <u>John Doe Defendants</u>

Plaintiff again names "John Does 1-25" as defendants, alleging that these defendants "are employed in various capacities by CSSD, CCCA, and The Connection, Inc." and that they "engaged in acts that had the purpose and effect of obstructing and violating [plaintiff's] legally protected rights." Doc. #56 at 3, ¶13. Plaintiff alleges that he requires the "benefit of discovery to properly identify" these defendants who "were in a position to help [plaintiff] to be freed of the unlawful confinement ..., but they failed and refused to do so." <u>Id.</u> The original IRO previously dismissed the John Doe defendants, without prejudice, for failure to allege their personal involvement in the alleged constitutional violations. <u>See</u> Doc. #47 at 13. Here too, the SAC fails to adequately allege the personal involvement of the John Doe defendants.

Although "it is proper for a section 1983 plaintiff to use a 'Doe' pleading until such time as her identity can be learned through discovery[,]" <u>Warren v. Goord</u>, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007), a plaintiff still must establish each Doe defendant's personal involvement in the alleged constitutional deprivation. <u>See</u> <u>Iqbal</u>, 556 U.S. at 676. Like the Amended

7

Complaint, the allegations of the SAC fail to specifically identify which Doe defendant participated in which constitutional violation(s).

The SAC now defines the term "Defendants" to encompass all defendants, including the John Does. Doc. #56 at 4, ¶15. This does not cure the lack of personal involvement, and constitutes impermissible group pleading. "As a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." Harry v. McDonald, No. 3:21CV01355(SALM), 2022 WL 3576676, at *3 (D. Conn. Aug. 19, 2022) (citation and quotation marks omitted); Tracey v. City of Geneva, No. 6:17CV06567(MAT), 2018 WL 1509355, at *2 (W.D.N.Y. Mar. 26, 2018) (Complaint "failed to state a viable claim under Section 1983[]" where it "engaged in impermissible group pleading" by "lump[ing] [defendants] together as the ... 'On-scene Defendants' and asserted ... claims against them as a group.").

Accordingly, all claims against John Does 1-25 are **DISMISSED, without prejudice**. If plaintiff identifies a specific actor involved in a specific way in the alleged constitutional violations, he may file an appropriate motion in accordance with

the Local and Federal Rules of Civil Procedure, even if he does
not know the actor's name.

   B.   <u>The Connection</u>

   The SAC names as a defendant The Connection, which "owns
and operates" the January Center. Doc. #56 at 2, ¶4. For reasons
stated in the original IRO, the SAC "adequately allege[s] that
The Connection, and its employees at the January Center, are
state actors for purposes of this action." Doc. #47 at 17.

   To reiterate the applicable law stated in the original IRO:

> "[A] private corporation" cannot "be held vicariously
> liable under §1983 for the actions of its employees."
> <u>Mejia v. City of N.Y.</u>, 228 F. Supp. 2d 234, 243 (E.D.N.Y.
> 2002); <u>Rojas v. Alexander's Dep't Store, Inc.</u>, 924 F.2d
> 406, 408 (2d Cir. 1990). Nevertheless, "[u]sing the
> <u>Monell [v. Dep't of Soc. Servs. of City of N.Y.</u>, 436
> U.S.  658  (1978),]  standard,  the  liability  of  a
> municipal corporation, or, in this case, a private
> corporation, may be established in a number of ways."
> <u>Bowen v. Rubin</u>, 385 F. Supp. 2d 168, 177 (E.D.N.Y. 2005).
> For example, a "private corporation[]" "may be found
> liable for a section §1983 violation where the [private
> corporation] <u>itself</u> causes the constitutional violation
> in question[,]" or where "an actual official policy" of
> the   corporation   "led   to"   plaintiff's   "alleged
> constitutional deprivations[.]" <u>Mejia</u>, 228 F. Supp. 2d
> at 243 (citation and quotation marks omitted).

Doc. #47 at 17-18 (alterations in original).

   The SAC appears to allege that The Connection, through the
January Center, maintains official policies that have led to
plaintiff's unlawful confinement. Accordingly, at this stage of
the proceedings, and as further discussed below, the Court will

permit the Eighth Amendment claim and Fourteenth Amendment
procedural due process claim related to plaintiff's unlawful
confinement to proceed against the Connection for further
development of the record.

C.   Eighth Amendment Violation (Count I)

Like the Amended Complaint, the SAC alleges that defendants
have kept plaintiff "confined without legal authority" following
the end of his legally authorized term of incarceration. Doc.
#56 at 17, ¶87. The law relevant to the Eighth Amendment claim
is set forth at some length in the original IRO, and will not be
repeated here. See Doc. #47 at 18-20.

For reasons stated in the original IRO, the Court will
permit this claim to proceed for further development of the
record against The Connection and against defendants Grella,
Sullivan, Hirsch, and Ring, in their individual capacities for
damages. See Doc. #47 at 20.[7]

---

[7] As set forth in the original IRO, because of the uncertainty of
plaintiff's confinement status, the Fourth or Fourteenth
Amendment could plausibly apply to plaintiff's allegations
regarding the conditions of confinement. The law applicable to
claims brought pursuant to those amendments is even more
generous than that applicable to Eighth Amendment claims. Thus,
even if the Eighth Amendment is not applicable because plaintiff
is no longer subject to a legal term of incarceration, the Court
would nevertheless permit this claim to proceed under the Fourth
or Fourteenth Amendment.

Based on the additional allegations of the SAC, the Court will also permit the Eighth Amendment claim to proceed for further development against Richardson and Wisniewski in their individual capacities for damages. See, e.g., Doc. #56 at 7, ¶35; id. at 9, ¶51; id. at 10, ¶52.

The SAC fails to state an Eighth Amendment claim against defendant Roper. Unlike the other individual defendants, there are no allegations from which to infer that Roper, a case worker, participated in keeping plaintiff unlawfully confined. Indeed, the only factual allegation naming Roper asserts that she canceled plaintiff's medical appointment without his consent. See Doc. #56 at 13, ¶66. Accordingly, plaintiff's Eighth Amendment claim (Count I) is **DISMISSED, without prejudice,** as to defendant Roper.

D.   Procedural Due Process Violation – Continued
     Confinement (Count II)

Count II of the SAC asserts that defendants have deprived plaintiff of his right to liberty without due process of law in violation of the Fourteenth Amendment. See Doc. #56 at 17-18.

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and those who seek to invoke its procedural protection must establish that one of these interests is at stake. Standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.

Victory v. Pataki, 814 F.3d 47, 59 (2d Cir. 2016) (citations and quotation marks omitted); see also Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012) ("A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."). "In order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." Victory, 814 F.3d at 59 (alteration adopted) (citation and quotation marks omitted).

At this early stage, the SAC alleges facts sufficient to state a procedural due process claim against The Connection and against defendants Grella, Ring, Hirsch, Sullivan, Richardson, and Wisniewski, in their individual capacities for damages.

The SAC fails to state a procedural due process claim against defendant Roper. For reasons previously stated, unlike the other individual defendants, there are no allegations from which to infer that Roper, a case worker, participated in keeping plaintiff unlawfully confined. Accordingly, plaintiff's Fourteenth Amendment due process violation claim relating to his unlawful confinement (Count II) is **DISMISSED, without prejudice** as to defendant Roper.

12

E.   Procedural Due Process Violation – Conditions of
     Release (Count III)

The SAC asserts: "The conditions of release imposed by
Defendants violate Torres' procedural Constitutional due process
rights." Doc. #56 at 18, ¶99. The Court construes this as
asserting a procedural due process violation.

Before considering whether Count III states a procedural
due process violation, the Court pauses to briefly address the
conditions of probation at issue. It is unsurprising that the
allegations of the SAC focus on plaintiff's continued
confinement -- plaintiff expected to be released from prison
many months ago but still finds himself confined in an
institutional setting. Plaintiff's continued confinement is
troubling; the other conditions that the probation office seeks
to impose are also concerning and raise more than just due
process concerns.

For example, one condition sought to be imposed by
Probation Officer Grella is that plaintiff "must agree to and
sign a Computer Access Agreement[.]" Doc. #56-5 at 2.[8] The

---

[8] Another condition of probation that Grella seeks to impose is
that plaintiff "will not possess a camera, camera phone, ... or
any device that can record and/or playback visual images without
Probation Officer approval." Doc. #56-5 at 2. This condition
implicates substantive due process concerns. See, e.g.,
Singleton v. Doe, 210 F. Supp. 3d 359, 375-76 (E.D.N.Y. 2016).
It also has no apparent relation to the underlying conviction.
See State v. Torres, 761 A.2d 766, 768-69 (Conn. App. Ct. 2000).

Computer Access Agreement would have plaintiff "agree" to additional conditions, including, <u>inter alia</u>: "I will not enter or participate in any bulletin boards, instant messaging or chat rooms of any type[;]" "I will not use any web-based email program which provides any ability to remain anonymous[;]" "I will not access any site that contains sexually explicit or sexually stimulating material and any other site that my Probation Officer has instructed me not to access[;]" and "I will use the internet according to the schedule approved by the Probation Officer." Doc. #56-6 at 2.

> A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. ... While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace — the 'vast democratic forums of the Internet" in general, <u>Reno v. American Civil Liberties Union</u>, 521 U.S. 844, 868 (1997), and social media in particular.

<u>Packingham v. North Carolina</u>, 137 S.Ct. 1730, 1735 (2017). Plaintiff "has a First Amendment right to be able to email, blog, and discuss the issues of the day on the Internet while he is on" probation. <u>United States v. Eaglin</u>, 913 F.3d 88, 96 (2d Cir. 2019). To the extent the above-cited conditions of probation would effectively foreclose plaintiff's access to the

internet (or social media), those conditions could run afoul of
the First Amendment.[9]

The Court next turns to plaintiff's procedural due process
claim. "A procedural due process claim is composed of two
elements: (1) the existence of a property or liberty interest
that was deprived and (2) deprivation of that interest without
due process." Bryant, 692 F.3d at 218.

Like the allegations of the Amended Complaint, the SAC
alleges facts sufficient to state a procedural due process claim
against the Adult Probation Officer defendants Grella and
Sullivan in their individual capacities for damages, and will be
permitted to proceed for further development of the record.

The procedural due process claim arising from the
imposition of plaintiff's probation conditions is **DISMISSED,
without prejudice**, for failure to state a claim as to Ring,
Hirsch, Richardson, Roper, Wisniewski, and The Connection,
because these defendants are not alleged to have been involved
with the imposition of the probation conditions challenged by
plaintiff.

---

[9] Accepting the allegations of the SAC as true, plaintiff is in a
quagmire. To obtain his physical liberty, plaintiff has been
told he must sign the forms agreeing to the terms of probation
which he challenges here. Alternatively, because he has refused
to sign those forms and instead challenges the constitutionality
of those conditions, plaintiff has been required to remain
confined at the January Center.

15

F.   <u>Violation of Privacy (Count V)</u>

In relevant part, the SAC alleges: "Defendants obtained and shared confidential medical records about Torres without obtaining proper authorization from him." Doc. #56 at 6, ¶32. Plaintiff later asserts: "By obtaining confidential medical records about Torres without proper authorization, Connection Inc and Hirsch have violated Torres rights to privacy in violation of 42 U.S.C. §1983 <u>et</u> <u>seq.</u>" <u>Id.</u> at 19, ¶104 (sic). The Court construes this claim as asserting a substantive due process violation against The Connection and Hirsch. <u>See</u> <u>generally</u> <u>Hancock v. Cnty. of Rensselaer</u>, 882 F.3d 58, 66-67 (2d Cir. 2018).

The Second Circuit recognizes "the right to privacy in one's personal information, including information about one's body[,]" such as the information contained in "[m]edical records[.]" <u>Id.</u> at 65 (alteration added) (citations omitted). Thus, the Fourteenth Amendment "protects individuals in this circuit from arbitrary intrusions into their medical records." <u>Id.</u>; <u>see also</u> <u>id.</u> at 66-67 ("[S]ubstantive due process ... categorically protects privacy in certain types of personal information" including "medical information[.]" (alterations added)). Although the right to privacy "is fundamental," it "is not absolute. ... A constitutional violation only occurs when

16

the individual's interest in privacy outweighs the government's interest in breaching it." Id. at 65.

To determine whether the disclosure of medical information has violated a party's Fourteenth Amendment substantive due process rights, the Court weighs the party's interest in the privacy of the information against the government's interest in obtaining that information. See id. at 65-66.[10] The Second Circuit has "repeatedly found that determining the strength of [the privacy] interest requires taking into account the seriousness of the condition and the stigma associated with it[,]" together with "other factors[.]" Id. at 67 (alterations added).

The SAC does not describe the nature of the medical information that plaintiff wished to keep confidential or the circumstances under which his medical information was obtained and/or disclosed. The strength of plaintiff's privacy interest, and whether there was a legitimate purpose for obtaining and/or disclosing the information, is unclear. In sum, plaintiff's allegations are insufficient to establish that his privacy

---

[10] Plaintiff's confinement status, which is unclear, impacts the balancing test applied to this question. See Hancock, 882 F.3d at 64-65; accord Schlosser v. Kwak, No. 3:20CV00393(SRU), 2020 WL 4003502, at *9 (D. Conn. July 15, 2020), aff'd, 16 F.4th 1078 (2d Cir. 2021). For purposes of this IRO, the Court assumes, without deciding, that plaintiff's confinement status is akin to that of an inmate serving a sentence of incarceration.

17

interest in his medical records outweighs any governmental interest. Accordingly, the SAC fails to state a claim for a substantive due process violation related to plaintiff's right to privacy in his medical records. See Arroyo v. Does #1-#4, No. 21CV10823(LTS), 2022 WL 161478, at *5 (S.D.N.Y. Jan. 18, 2022) (Complaint failed "to state a claim under section 1983 that the disclosure of his confidential medical information violated his right to substantive due process[]" where it did "not include facts about the nature of the medical information that he wished to keep confidential, and" did "not plead facts about the circumstances under which his medical information was disclosed[.]"); Jones v. Quinones, No. 19CV05524(NSR), 2021 WL 1178092, at *3 (S.D.N.Y. Mar. 26, 2021) (Plaintiff's right to privacy claim was dismissed where, inter alia, the plaintiff failed "to allege any facts regarding his medical conditions.").

Accordingly, plaintiff's claim for violation of privacy (Count V) is **DISMISSED, without prejudice.**

G.  Conspiracy (Count VI)

The SAC asserts: "Defendants conspired together to violate Torres' Constitutional and civil rights." Doc. #56 at 19, ¶107.

To state a claim for a section 1983 conspiracy, plaintiff "must allege (1) an agreement ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

18

furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); accord Anemone v. Metro. Transp. Auth., 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) ("A civil rights conspiracy requires an agreement between two or more actors to inflict an unconstitutional injury."). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed[.]" Ciambriello, 292 F.3d at 325 (citation and quotation marks omitted).

The SAC's allegations of conspiracy are entirely conclusory and fail to allege "any nonconclusory facts establishing either the existence of a conspiracy or a meeting of the minds necessary to support such a claim." Thomas v. Morley, No. 20CV07520(PMH), 2022 WL 394384, at *15 (S.D.N.Y. Feb. 9, 2022). Accordingly, the claim for conspiracy (Count VI) is **DISMISSED, without prejudice,** as to all defendants.

H.   Injunctive and Declaratory Relief

Plaintiff seeks declaratory and injunctive relief. See Doc. #56 at 19, ¶¶c-e.

As previously noted, the SAC asserts claims against the individual defendants in their individual capacities only. See id. at 3, ¶12. The Court assumes this is an oversight in

19

drafting because the original IRO permitted "plaintiff's
requests for injunctive and declaratory relief against ... the
defendants in their <u>official capacities</u> to proceed[.]" Doc. #47
at 22 (emphasis added). Nevertheless, as stated in the original
IRO, "plaintiff 'cannot obtain prospective injunctive relief
from the Defendants sued in their individual capacities as such
Defendants would not have the authority to provide such relief
in their individual capacities.'" <u>Id.</u> at 21-22 (quoting <u>Kuck v.
Danaher</u>, 822 F. Supp. 2d 109, 143 (D. Conn. 2011)). Accordingly,
all requests for injunctive and declaratory relief asserted
against the individual defendants in their <u>individual capacities</u>
are **DISMISSED, with prejudice.** <u>See</u> <u>Manon v. Hall</u>, No.
3:14CV01510(VLB), 2015 WL 8081945, at *8 (D. Conn. Dec. 7, 2015)
(Plaintiff's "claims for injunctive and declaratory relief are
properly asserted against Defendants ... in their official
capacities, not their individual capacities."). The Court will
permit plaintiff's request for injunctive relief against The
Connection, as set forth in paragraph c. of the Demand for
Relief, to proceed. <u>See</u> Doc. #56 at 19, ¶c.

   Plaintiff seeks: "An Order directing the destruction of all
records and reports obtained or created by Defendants be
destroyed[.]" Doc. #56 at 19, ¶(e) (sic). The SAC alleges that
plaintiff's conditions of probation are subjecting him "to

involuntary confinement" such that he "has been held against his free will[,]" id. at 6, ¶33, as well as other deprivations of liberty. Although plaintiff has pled a claim for invasion of privacy, that claim has now been dismissed. See Section III.F., supra. The request for injunctive relief contained in paragraph e. of the Demand for Relief does not appear to relate to the claims remaining in the SAC, and therefore is **DISMISSED, without prejudice.** See, e.g., Gulley v. Mulligan, No. 3:18CV00858(SRU), 2020 WL 1139994, at *2 (D. Conn. Mar. 9, 2020) (denying request for injunctive relief "because the remedy [plaintiff] seeks is not closely related to the constitutional violation he asserts in this case." (alteration added)).

Finally, plaintiff seeks: "A declaration that each and every condition and mandate of probation sought to be imposed against Torres as set forth in Exhibits B-J is unenforceable[.]" Doc. #56 at 19, ¶d. The only defendant remaining against which declaratory relief is available is The Connection, which did not impose or seek to impose the conditions of probation that plaintiff now challenges. See Section III.E., supra. Accordingly, plaintiff's claim for declaratory relief is **DISMISSED, without prejudice.**

## IV.   CONCLUSION AND ORDERS

Having accepted as true all allegations in the SAC, the Court finds that this case may proceed to service of process on

the claims for **(1)** the Eighth Amendment violation against **The Connection, and against defendants Grella, Sullivan, Hirsch, Ring, Richardson, and Wisniewski** in their individual capacities for money damages (Count I); **(2)** the Fourteenth Amendment due process violation related to plaintiff's continued confinement against **The Connection, and against defendants Grella, Sullivan, Hirsch, Ring, Richardson, and Wisniewski** in their individual capacities for money damages (Count II); and **(3)** the Fourteenth Amendment due process violation related to plaintiff's conditions of probation against defendants **Grella and Sullivan** in their individual capacities for money damages (Count III). The Court will permit plaintiff's request for injunctive relief against The Connection as set forth in paragraph c. of the Demand for Relief to proceed at this time.

All claims against John Does 1-25 are **DISMISSED, without prejudice.**

All claims for injunctive and declaratory relief against defendants in their individual capacities are **DISMISSED, with prejudice.**

All claims asserted against defendant Roper are **DISMISSED, without prejudice.**

Count VI asserting a violation of plaintiff's federally protected civil rights is **DISMISSED, without prejudice**, as to

all defendants.

Count V asserting violation of privacy is **DISMISSED, without prejudice**, as to all defendants.

Count VI asserting conspiracy is **DISMISSED, without prejudice**, as to all defendants.

Plaintiff's claim for declaratory relief is otherwise **DISMISSED, without prejudice.**

**Plaintiff may respond to this Order in one of two ways:**

**OPTION 1:** Plaintiff may proceed **immediately** to service on **The Connection, Grella, Sullivan, Hirsch, Ring, Richardson, and Wisniewski** on the claims permitted to proceed by this IRO. If plaintiff selects this option, he shall file a Notice on the docket on or before **April 3, 2023**, informing the Court that he elects to proceed with service as to these defendants. The Court will then immediately begin the effort to serve process on defendants The Connection, Grella, Sullivan, Hirsch, Ring, Richardson, and Wisniewski.

**Or, in the alternative:**

**OPTION 2:** Plaintiff may file a Third Amended Complaint, addressing the deficiencies identified in this Order. Any Third Amended Complaint will completely replace the prior complaints in the action. No portion of the original Complaint [Doc. #1], the Amended Complaint [Doc. #46], or SAC [Doc. #56] will be

23

incorporated into the Second Amended Complaint by reference, or considered by the Court.

Any such Third Amended Complaint must be filed by **April 3, 2023. The SAC will not be served on any defendant and will have no effect if a Third Amended Complaint is filed.**

If a Third Amended Complaint is filed, the Court will review it pursuant to 28 U.S.C. §1915 to determine whether it is sufficient to proceed to service on any defendant. **The Court is unlikely to grant further leave to amend. Plaintiff and his counsel shall take all reasonable efforts to ensure that all pleading deficiencies identified herein have been adequately addressed in any Third Amended Complaint.**

It is so ordered at Bridgeport, Connecticut, this 13th day of March, 2023.

_____/s/_____
Hon. Sarah A. L. Merriam
United States Circuit Judge
Sitting by Designation