## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY TORRES, | ) | 3:22-cv-00883 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF CONNECTICUT OFFICE OF | ) | |
| ADULT PROBATION, STATE OF | ) | |
| CONNECTICUT OFFICE OF THE | ) | |
| CHIEF CLERK ADMINISTRATOR, THE | ) | |
| CONNECTION, INC., NICOLE | ) | |
| GRELLA, COURTNEY RING, CAITLIN | ) | |
| HIRSCH, MICHAEL SULLIVAN, | ) | |
| SARAH RICHARDSON, MARY E. | ) | |
| ROPER, BRIANNA WISNIEWSKI, *and* | ) | |
| PHILLIP SCHUFF, | ) | |
| *Defendants*. | ) | November 27, 2023 |

## <u>RULING ON DEFENDANTS' MOTIONS TO DISMISS</u>

Following his release from state prison in June of 2022, Plaintiff Anthony Torres was transferred to the January Center, a residential sex offender treatment facility located on the grounds of Corrigan Correctional Institution in Uncasville, Connecticut. There, according to his July 2022 complaint, he was subjected to restrictions on his liberty akin to imprisonment, despite that he was set to begin a court-ordered term of thirty-five years of probation.

Plaintiff brings claims for violations of the Eighth Amendment and Fourteenth Amendment and intentional infliction of emotional distress ("IIED") against several defendants: parole officer Nicole Grella, probation officer Michael Sullivan, and probation officer Phillip Schuff ("the State Defendants"); the private entity that owns and operates the January Center pursuant to a contract it holds with the State of Connecticut, The Connection, Inc. ("Connection"); and Connection employees Courtney Ring (Director), Caitlin Hirsch (Clinical Therapist), Brianna Wisniewski (Clinical Therapist), Sarah Richardson (Case Worker), and Mary Roper (Case Worker) ("the

individual Connection Defendants," together with Connection "the Connection Defendants").[1] Plaintiff argues that his transfer to the January Center following his incarceration was tantamount to continued detention past his mandatory release date. He seeks money damages, an injunction enjoining Defendants from "obstructing . . . his constitutional and civil rights and enforcing [his] probation conditions," and a declaration that his conditions of probation are unenforceable. Third Am. Compl., ECF No. 66 at 23–24. On March 31, 2023, during the pendency of this litigation, Plaintiff was charged with violating conditions of his probation and arrested at the January Center. He was later convicted of the probation violation charge, and his appeal of that conviction is pending.

The Connection and State Defendants have each filed separate motions to dismiss. For the reasons explained herein, the Court does not address these motions in their entirety because abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate. The State Defendants' motions to dismiss is GRANTED IN PART as it relates to their *Younger* arguments, and otherwise DENIED IN PART as moot. The Connection Defendants' motion to dismiss is DENIED as moot. Plaintiff's claims for injunctive and declaratory relief are DISMISSED without prejudice, Plaintiff's claims for monetary damages are STAYED, and the case is administratively CLOSED with leave to reopen after the conclusion of the state proceedings. Plaintiff may move to reopen should *Younger* abstention no longer be appropriate.

## I.    FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Third Amended Complaint.

---

[1] This claims in this action are similar to those raised in *Blango v. Luddivico*, No. 23-CV-00212 (SVN).

A. <u>The January Center</u>

The January Center is a residential sex offender treatment facility operated by Connection pursuant to a contract it holds with the Connecticut Department of Correction ("DOC").  ECF No. 66 ¶ 24.  Individuals convicted of sex offenses have been transferred to the January Center when their court-ordered prison sentence expired, and they were set to begin their court-ordered terms of post-prison parole or probation.  *Id.* ¶¶ 24–25.

The January Center is surrounded by a high fence of barbed wire.  *Id.* ¶ 45.  The exit door of the facility remains unlocked at all times.  *Id.* ¶ 47.

Individuals may not leave the January Center without permission, however, and if permission is granted they must be escorted at all times by a January Center chaperone and are required to use center-provided transportation.  *Id.* ¶¶ 47–48.  Individuals are threatened with arrest for violating conditions of their probation or parole, should they leave the January Center without permission.  *Id.* ¶ 47.

Inside the January Center, individuals are subject to several other restrictions.  For example, January Center employees may search individuals' rooms and personal belongings without a legitimate reason.  *Id.* ¶ 60.  The January Center also limits available reading materials, television programming, and computer access.  *Id.* ¶¶ 50–52.  Further, the January Center restricts medical appointments individuals may schedule off site, and if permission to attend such an appointment is granted, chaperones may confiscate individuals' medical paperwork afterwards. *Id.* ¶ 53.

B. <u>Plaintiff Torres</u>

*1. Transfer to the January Center*

Following a trial, Plaintiff was convicted of multiple sex offenses in Connecticut state court, and sentenced to a period of incarceration and thirty-five years of probation in 1998. *Id.* ¶¶ 18, 26. *See also State v. Torres*, 60 Conn. App. 562 (2000).[2] Although the court's sentence did not include any residential restrictions, it generally allowed for the imposition of "special conditions." *Id.* ¶¶ 71, 83.

On or about December 10, 2021, Plaintiff met with Defendant Grella, a probation officer with the DOC, and learned what the conditions of his upcoming probation would be. *Id.* ¶ 22. Plaintiff alleges he was "shocked" to learn that the conditions were considerably more restrictive than what he remembered being imposed at his sentencing. *Id.* In a later conference with Grella in early June of 2022, Plaintiff learned that he would be involuntarily transferred to the January Center. He was told he would be arrested if he resisted transfer. *Id.* ¶ 23.

On June 15, 2022, Plaintiff was placed in handcuffs and transferred to the January Center. *Id.* ¶ 25. Upon arrival, January Center staff asked that he sign several forms, including forms titled "Conditions of Probation," "Court Ordered Special Conditions," "Probation Officer Ordered Special Conditions," and "Sex Offender Conditions of Probation," under threat of arrest for violation of probation should he not comply. *Id.* ¶¶ 80–82.

*2. Additional Allegations related to Plaintiff's Healthcare, Post-Center Transition, and Lawsuit*

Plaintiff makes several additional allegations related to the Connection Defendants' control of his mental healthcare. Connection employees Ring, Hirsch, and Wisniewski allegedly communicated to Plaintiff that, as a condition of his probation, he was required to participate in

---

[2] Plaintiff denies he committed the crimes for which he was convicted and sentenced. ECF No. 66 ¶ 19.

sessions with a January Center therapist where he would be required to confess to having engaged in sexual conduct he long denied. *Id.* ¶ 54. Plaintiff preferred to work with a private therapist off site, and was concerned that the therapist at the January Center may share information with his private therapist without his permission, tainting their relationship. *Id.* ¶¶ 36, 38, 54.

Defendants also allegedly interfered with Plaintiff's ability to transition to living as a civilian in the municipality of his own choosing after the January Center. First, Defendants made it difficult for him to obtain a birth certificate and in turn, a state-issued identification card and bank account in which he could deposit social security payments. Specifically, when Plaintiff had a scheduled call with the Social Security Administration ("SSA"), Defendant Richardson did not connect Plaintiff with the SSA representative. *Id.* ¶ 36. Second, Plaintiff claims Defendant Schuff failed to provide Plaintiff with the opportunity to tour housing in New Haven (his preferred location), pushing him to live in Hartford on the grounds that Plaintiff's selected therapist was located in Manchester. *Id.* ¶ 37; *see also id.* ¶ 47 (Ring, Director of the January Center, telling Plaintiff he may be arrested if he left the facility to seek housing in New Haven without permission).

There were also restrictions related to Plaintiff's ability to bring this lawsuit. In addition to the general restrictions on computer and media access, Plaintiff alleges January Center employees prohibited Plaintiff from visiting a law library and confiscated his personal writings, including materials prepared for this civil action. *Id.* ¶¶ 49, 52, 61. Sullivan, Hirsch, and Wisniewski allegedly demanded that Plaintiff cease from having contact with the American Civil Liberties Union of Connecticut and identifying other similarly situated individuals. *Id.* ¶ 63. Finally, Plaintiff alleges Defendants have also withheld information regarding upcoming court dates in his state civil action. *Id.* ¶¶ 67–68.

3.  *Arrest for Violation of Probation*

Around March of 2023, Plaintiff was preparing to transition out of the January Center, though his plans to search for housing had been met with resistance.  *Id.* at 2.

On March 30, 2023, after this lawsuit was underway, Sullivan allegedly informed Plaintiff that a GPS tracking device was to be placed on him and that he needed to sign a document.  *Id.* Sullivan then waved a paper that he stated was a court order.  *Id.*  Plaintiff responded that he would not resist wearing the GPS tracking device, but that he intended to make a legal challenge.  *Id.* Schuff became irate at this response, and insisted that Plaintiff sign the paper.  *Id.*  The following day, according to Plaintiff, Sullivan and three officers arrested him on an unspecified charge of violation of probation.  *Id.*

In addition to the allegations in Plaintiff's complaint, the Court takes judicial notice of relevant state court documents.[3]  *See Yeboah v. Bank of Am., N.A.*, No. 3:18-cv-2020 (VAB), 2019 WL 3388045, at *4 n. 5 (D. Conn. July 26, 2019) (taking judicial notice of state court documents for *Younger* purposes).  Plaintiff was convicted of the probation violation and sentenced on August 15, 2023, to ten years' incarceration, suspended after two years, followed by a thirty-year term of probation.  *State v. Torres*, No. UWY-CR96-0246948-T, Tr. of Aug. 15, 2023, Proceedings, ECF No. 101-3 at 5.  Plaintiff has appealed this decision, and the appeal is currently pending.  *See* State of Conn. Judicial Branch, Supreme Court and Appellate Court Look-up By Docket Number,

---

[3] In their motion to dismiss, the State Defendants identify Plaintiff's case number and refer the Court to the Connecticut Judicial Branch case locator of pending actions, and attach a copy of the then-current state court docket.  State Defs.' Mot. to Dismiss, ECF No. 92 at 8 n. 4; *see also* Ex. A., ECF No. 92-2 (showing a state court docket sheet "accurate" as of July 18, 2023, and with "Remote Hearing on 7/26/2023").  Before oral argument, the State Defendants moved for the Court to take judicial notice of developments in the state court proceedings, ECF No. 101, which the Court granted from the bench during oral argument, absent objection from Plaintiff.  ECF No. 105.  The motion for judicial notice included transcripts from state court proceedings on August 14 and 15, 2023, which the Court has considered in connection with this ruling.  *See* ECF No. 101-2 and 101-3.

6

http://appellateinquiry.jud.ct.gov/AppealNoInq.aspx (last accessed November 27, 2023) (docket number 46991).

## II.        PROCEDURAL BACKGRO UND

Plaintiff initiated this action *pro se* pursuant to 42 U.S.C. § 1983.  Compl., ECF No. 1.  The Court, Merriam (U.S.D.J., now U.S.C.J.), appointed Plaintiff *pro bono* counsel for purposes of filing an amended complaint.  Following the filing of a Third Amended Complaint, Judge Merriam issued a Third Initial Review Order assessing which of Plaintiff's claims could proceed.  ECF No. 73.  In the Third Initial Review Order, the Court allowed Plaintiff to proceed with the following claims:  (1) violation of the Eighth Amendment, against the Connection Defendants and State Defendants, for cruel and unusual punishment at the January Center; (2) violation of the Fourteenth Amendment's Due Process Clause, also against the Connection Defendants and State Defendants, for Plaintiff's continued confinement past his mandatory release date; (3) violation of the Fourteenth Amendment's Due Process Clause, against the State Defendants only, for the State Defendants' administrative modification of Plaintiff's conditions of probation; and (4) for IIED, against the Connection Defendants and State Defendants.  *Id.* at 21.

The Third Initial Review Order permitted Plaintiff to seek monetary damages from Defendants in their individual capacities.  *Id.*  The Court also permitted Plaintiff to proceed with his request for injunctive relief against The Connection and the individual Defendants in their official capacities, which sought an order "[p]reliminarily and permanently enjoining Defendants in their official capacities from obstructing Torres' Constitutional and civil rights and enforcing the probation conditions," and his request for declaratory relief against the State Defendants in their official capacities, in which he sought order that "each and every condition and mandate of

probation sought to be imposed against [him] . . . is unenforceable." *Id.* at 21–22 (referencing ECF No. 66 at 23).

In response, the Connection Defendants and State Defendants each filed a separate motion to dismiss.  ECF Nos. 91–92.

### III.   *YOUNGER* ABSTENTION

The Connection Defendants and State Defendants raise different arguments in each of their motions to dismiss Plaintiff's Third Amended Complaint.  The State Defendants argue that the Court should refrain from hearing this case entirely under *Younger*, in light of the ongoing state proceedings concerning Plaintiff's violation of probation, and that Plaintiff's claims are also barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because they necessarily imply the invalidity of his criminal sentence.  If the Court were to reach the merits of his claims, the State Defendants argue Plaintiff has nonetheless failed to allege the State Defendants' personal involvement in the constitutional deprivations, and that they are entitled to qualified immunity on the constitutional claims and absolute immunity on the IIED claim, over which they contend the Court should not exercise supplemental jurisdiction.

For their part, the Connection Defendants argue there is no "state action" predicate for Plaintiff's constitutional claims against them; that Plaintiff fails to state an Eighth or Fourteenth Amendment claim because he fails to allege he was actually "confined" past his mandatory release date or that the individual Connection Defendants were personally involved or acted with the requisite intent; and that Plaintiff fails to state an IIED claim, because he does not allege the Connection Defendants intentionally engaged in extreme and outrageous conduct.

The Court holds that *Younger* abstention is appropriate, and so the Court does not reach either the State Defendants' remaining arguments or the Connection Defendants' arguments.  The

Court therefore dismisses without prejudice Plaintiff's claims for injunctive and declaratory relief and stays Plaintiff's claims for monetary damages pending resolution of the ongoing state court proceedings.

A.   Legal Standard

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).   In *Younger*, however, the U.S. Supreme Court recognized the longstanding equitable principle that "a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury, should not enjoin a criminal proceeding in state court," even when it possesses jurisdiction over the matter.  *Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 646 (2d Cir. 2009)).  The Supreme Court reasoned that such restraint "prevent[s] erosion of the role of the jury and avoid[s] a duplication of legal proceedings and legal sanctions,'" and is "'reinforced' by the notion of 'comity,' that is, a proper respect for state functions."  *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Younger*, 401 U.S. at 44) (hereafter "*Sprint*").  This principle of federal court restraint has come to be known as *Younger* abstention.

Since *Younger* was decided, the Supreme Court has expanded its scope slightly; *Younger* abstention may be appropriate not only when there are parallel state criminal proceedings, but also when certain civil proceedings are pending.   Specifically, *Younger* now applies "in three 'exceptional circumstances'":   "(1) pending state criminal proceedings; (2) civil enforcement proceedings that are 'akin to criminal prosecutions'; and (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'"  *Schorr*, 686 F. App'x at 36 (quoting *Sprint*, 571 U.S. at 70).  The Court reasoned that the second category, civil enforcement

proceedings, resemble criminal prosecutions in "important respects": they "characteristically . . . sanction the federal plaintiff . . . for some wrongful act"; they are "routinely" initiated by a state actor; and they are "commonly" preceded by investigations that culminate in the "filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79–80 (internal quotation marks and citations omitted). The third category is meant to "stand[ ] in aid of the authority of [states'] judicial system so that its orders and judgments are not rendered nugatory." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (quoting *Juidice v. Vail*, 430 U.S. 327, 336 n. 12 (1977)).

In addition, before invoking *Younger* in any of the three exceptional circumstances, "a federal court may appropriately consider three additional factors laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), that further counsel in favor of abstention: Whether there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2021) (quoting *Sprint*, 571 U.S. at 81 (cleaned up)) (hereafter, the "*Middlesex* factors"). None of these factors are "dispositive," though the Second Circuit has not addressed just "how much weight we should afford these 'additional factors' after *Sprint*." *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015); *see also id.* (explaining how *Sprint* altered the Second Circuit's preexisting rule in *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003), that district courts must abstain whenever these three conditions were satisfied).

Despite the "strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). Two "tightly defined exceptions" have thus

developed in which *Younger* should not apply:  the bad faith exception and the extraordinary circumstances exception.  *Id.*  The bad faith exception applies "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction."  *Id.* at 199 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).  The extraordinary circumstances exception applies, as the name suggests, only in the very rare instance when the state court is "incapable of fairly and fully adjudicating the federal issues before it."  *Id.* at 201 (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).  If either of the exceptions apply, "the need for deference to state proceedings" is "reduc[ed]."  *Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).  A plaintiff bears the burden of proving an exception applies.  *Diamond "D" Const. Corp.*, 282 F.3d at 198.

Relevant here, "[t]o invoke th[e bad faith] exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  *Id.* at 199.  "The 'subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of,' the bad faith inquiry."  *Id.*

B.  Additional Facts

The following additional facts are relevant to the Court's decision on whether it should abstain from this case under *Younger*.  *See Middlesex*, 457 U.S. at 429 (discussing district court's development of facts through evidentiary hearing on *Younger* issue).

All parties agree that, in the days leading up to Plaintiff's arrest, there was increasing tension related to Plaintiff's upcoming release from the January Center.  Plaintiff alleges that, despite being steadfast in his desire to live in New Haven, he was denied the opportunity to tour housing there and was pressured to live in Hartford.  ECF No. 66 ¶ 37.  The underlying arrest

warrant, which Plaintiff's counsel later filed on the docket in this action,[4] further describes how

on March 24, 2023, Plaintiff informed January Center staff that he had spoken with his federal

counsel about filing a motion so that he may travel to New Haven unescorted and without a GPS

tracking device daily until he found a place to live.[5]  In response, a compromise was proposed that

Plaintiff could search for housing in New Haven with a case manager, and Plaintiff was also

provided with a housing option in Hartford to investigate.  Arrest Warrant Appl., ECF No. 104-1

at 10.  On March 29, 2023, Plaintiff told January Center staff that he would rather simply look at

a list of housing options than tour the housing with the case manager, and declined to engage in a

screening call with the potential housing option in Hartford.  *Id.*

In his Third Amended Complaint, Plaintiff claims he was arrested on March 31, 2023, for

an unspecified violation of probation charge after he told Schuff that he would pursue legal action

in response to a GPS tracking device being placed on him (which he claims he would not resist).

ECF No. 66 at 2.  The arrest warrant indicates otherwise; the affiant details that, on March 29,

2023, Plaintiff told January Center staff he was planning to take a bus to New Haven at 7 am the

next morning, unescorted, to look for housing and "would not have a security bracelet."  ECF No.

---

[4] Plaintiff filed this arrest warrant under seal in light of potential confidentiality restrictions.  Pursuant to its statement on the record at oral argument, the Court allowed Plaintiff to make this filing under seal subject to reconsideration after Plaintiff's federal counsel confirmed with Plaintiff's state counsel whether there were any such restrictions. Plaintiff's state counsel initially represented that there were no confidentiality restrictions requiring the document to be sealed, but said he would conduct an investigation to confirm.  ECF No. 107.  The Court never received such confirmation through Plaintiff's present federal counsel, and now notes that "in order to seal, it remains incumbent on the court to make 'particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons.'"  *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012772, at *11 (D. Conn. Aug. 5, 2013) (quoting in part D. Conn. L.R. 5(e)(3)).  The Court cannot find that the sealing the arrest warrant affidavit, which contains highly relevant factual descriptions of the nature of Plaintiff's arrest and violation of probation charge, is warranted.  It is a "judicial document[]" that should be presumptively public, and the reason Plaintiff has asserted for sealing—that the allegations would negatively impact the treatment he receives during his period of incarceration—do not trump the strong interest in public disclosure of a document on which the Court relies heavily in reaching a decision.  *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139, 142 (2d Cir. 2016).  The Court therefore denies Plaintiff's motion to seal, ECF No. 103, and unseals ECF No. 104.  *See* D. Conn. L.R. 5(e)(3).
[5] According to the arrest warrant affidavit, before Plaintiff was released from DOC custody, he was told by a probation officer that GPS monitoring could be imposed "at any time during the period of probation supervision even if the Court has not specifically ordered it," and Plaintiff indicated he understood.  ECF No. 104-1 at 3.

104-1 at 10–11.   According to the arrest warrant affidavit, Plaintiff refused the GPS device placement and said that if one was affixed, he would "cut it off."   *Id.* at 11.

The arrest warrant specifies that the violation of probation charge Plaintiff was arrested on the next day relates not only to this incident, but others dating back to 2022.  For example, although Plaintiff initially stated that he understood his conditions of probation and would abide by them, *id.* at 3, he is claimed to have repeatedly refused to participate in treatment assessments and to permit staff to complete pat downs, and would schedule medical appointments for himself against January Center rules.  *Id.* at 11–12.  The arrest warrant affidavit also alleges that Plaintiff exhibited verbally aggressive behavior toward staff, and that Plaintiff began refusing to meet with Probation Officer Sullivan in November of 2022.   *Id.* at 5. Ultimately, shortly after Plaintiff refused installation of the GPS monitor, said he would cut it off, and indicated he would be taking the bus to New Haven to search for housing without a GPS monitor, Plaintiff was charged with violating three "standard conditions" of probation:

> "2.  Report as the Probation Officer tells you . . . (for failing to report to PO Sullivan as directed) . . .", "3.  Keep the Probation Officer informed of where you are . . . and allow the Officer to visit you as he or she requires (for failing to speak with PO Sullivan at the January Center," and "7.   Submit to any medical and/or psychological examination . . . and/or counseling sessions required by the Court or the Probation Officer (for failing to comply with the January Center").

*Id.* at 12.  Plaintiff was also charged with violating two "special conditions" (that he "[s]ubmit to sexual offender treatment (for the January Center violations noted above)" and "[s]ubmit to intensive probation supervision (for failing to meet with PO Sullivan, refusal of GPS, and refusal of discharge plan)"), an overlapping "Probation Officer Imposed Condition of Probation" that he abide by the rules of the January Center and successfully discharge from the program," and three similar "Sex Offender Conditions of Probation."  *Id.* at 12–13.

13

On August 14, 2023, the Connecticut Superior Court held an evidentiary hearing regarding Plaintiff's violation of probation charges.  Mot. for Judicial Notice, ECF No. 101 at 2; *State v. Torres*, No. UWY-CR96-0246948-T, Tr. of Aug. 14, 2023, Proceedings, ECF No. 101-2.  The state court, noting that there is a pending federal case, found that "the conditions imposed" on Plaintiff at the January Center "were reasonably related to the defendant's rehabilitation and further finds that none of the conditions imposed by the Office were, in fact, inconsistent with any of the conditions that were originally imposed by [the sentencing judge]." *Id.* at 3 (quoting state court transcript ECF No. 101-2 at 106).  Plaintiff appealed the state court's finding to the Connecticut Appellate Court, which is pending as of November 27, 2023, under docket number 46991.  *See* State of Conn. Judicial Branch, Supreme Court and Appellate Court Look-up By Docket Number, http://appellateinquiry.jud.ct.gov/AppealNoInq.aspx (last accessed November 27, 2023).

C.  Discussion

The Court finds *Younger* abstention appropriate in this case.  There is no dispute that this case falls into the first *Younger* category as it involves an ongoing state criminal proceeding.  The Court finds that the *Middlesex* factors further weigh in favor of abstention.

First, as noted, the state criminal proceeding remains ongoing.  Second, the Court has little difficulty finding that the parallel state proceedings in this case "implicate[ ] important state interests." *Sprint*, 571 U.S. at 81 (citing *Middlesex*).  This case falls into the first, original *Younger* category of state criminal proceedings and thus presents a strong case for abstention.  *See Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988) ("There is no question that [an] ongoing prosecution implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings.").  Probation is an integral part of a state's administration of its criminal

14

justice system.  As the Second Circuit has recognized, "it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one."  *Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995); *see also Schlosser v. Elzea*, No. 3:19-cv-1380 (SRU), 2019 WL 5425385, at *2 n. 1 (D. Conn. Oct. 22, 2019) (noting, on initial review, that the plaintiff could not "challenge the validity of his prior violation of probation conviction or his pending violation of probation charges" in light of *Younger*).  Thus, the first and second *Middlesex* factors weigh in favor of abstention in this case.

The Court also finds the third *Middlesex* factor, that the ongoing state proceeding "provides an adequate opportunity to raise federal challenges," satisfied.  *Sprint*, 571 U.S. at 81 (citing *Middlesex*).  Plaintiff, who does not appear to contest the first and second *Middlesex* factors, argues that the state proceeding "does not overlap" with any of the questions presented in this case; rather, it "addresses the sole question of whether Torres engaged in some prohibited activity as governed by his post-incarceration conditions of probation."  Pl.'s Opp. Mot. to Dismiss, ECF No. 96 at 8. This argument is unpersuasive.  First, it does not matter whether the proceedings actually "overlap."  All that is required is that Plaintiff's has an "opportunity" to address federal questions in the ongoing state proceeding, which he does.  Second, this characterization by Plaintiff is contradicted by the state court record and, specifically, the transcript of the August 2023 hearing, which evinces that the judge also considered whether the January Center was in and of itself a reasonable and valid condition of probation.

The State Defendants are incorrect, however, to rely on how Plaintiff may raise federal claims in later, collateral reviews of his conviction on this third "opportunity" factor.  *See* ECF No. 92-1 at 11, 12.  It is not the availability of state remedies at some future point that may warrant *Younger* abstention.  Rather, it is the existence of an *ongoing* state court proceeding in which the

plaintiff could litigate his federal constitutional claims.  The Court is mindful of the Connecticut Supreme Court's decision in *State v. Imperiale*, 337 Conn. 694 (2021), which held that placement at the January Center was not the functional equivalent of incarceration, and therefore did not violate the plaintiff's due process rights.  In light of *Imperiale*, Plaintiff's claims of constitutional violations for his placement at the January Center might essentially be futile.  But the futility of a claim in state court does not preclude abstention under *Younger*.  *See Hansel*, 56 F.3d 394 (finding *Younger* abstention appropriate even where the highest state court had already rejected the constitutional claim being alleged, because the plaintiff was "not barred on procedural or technical grounds from raising alleged constitutional infirmities" in the ongoing state proceeding).  Instead, underlying *Younger* abstention are principles of "comity and deference" that "give states the first opportunity—but not the only, or last—to correct those errors of a federal constitutional dimension that infect its proceedings," if such errors are even found to exist.  *Diamond "D"*, 282 F.2d at 200.

Finally, Plaintiff has not met his burden of showing that the "bad faith" exception to *Younger* applies.[6]  Plaintiff argues that his arrest and the initiation of parallel state proceedings "smacks of bad faith and retribution, and perhaps [i]s a strategy to evade the scrutiny of this Court." ECF No. 96 at 1.  The Court recognizes that some, but not all, of the conduct on which Plaintiff's probation violation charge was predicated predated his arrest by months, and any sudden decision to charge Plaintiff for dated violations of his conditions of probation could suggest strategic behavior on the part of the State Defendants to thwart this federal lawsuit.  But it is clear the precipitating event for the probation violation charges was Plaintiff's threat to leave the January Center unescorted and refusal to have a GPS tracking device placed on him, in violation of his conditions of probation.  In essence, Plaintiff's noncompliance came to a head with the events of

---

[6] Plaintiff does not argue that the extraordinary circumstances exception applies here.

March 29, 2023, prompting the probation office to seek the arrest warrant two days later.  While the probation officers sought the arrest warrant for the earlier noncompliance *and* the refusal of the GPS device, the Court cannot find that they acted with a "retaliatory, harassing, or other illegitimate motive" in bringing the charges.  *Jackson Hewitt*, 455 F. App'x at 18.  More fundamentally, the standard for "bad faith" in the *Younger* context is whether the state authority has "no reasonable expectation of obtaining a favorable outcome" in bringing the charges.  *Cullen*, 18 F.3d at 103.  This element cannot be met here where the state actually obtained a favorable outcome—a violation of probation conviction.  For these reasons, Plaintiff has not met his burden of demonstrating that the bad faith exception to *Younger* exception applies.

In light of this holding, the Court must consider how to proceed.  Although only the State Defendants moved for *Younger* abstention, the principles of *Younger* as set forth in this ruling would be undermined were the Court to entertain Defendants' remaining arguments for dismissal at this time.  Thus, the Court will not reach Defendants' remaining arguments.

Importantly, however, *Younger* abstention "originated as a doctrine" requiring abstention from cases that would necessitate the issuance of equitable relief, and may have less force in a case seeking monetary damages because of the lower likelihood, in those matters, of "unacceptable interference with the ongoing state proceeding."  *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("*Younger* abstention is not appropriate with respect to [the plaintiff's] claim for money damages under § 1983 against [the defendant] because it is a claim for money damages and not for declaratory or injunctive relief").  Thus, while the Court must dismiss Plaintiff's requests for injunctive and declaratory relief on *Younger* abstention grounds, his request for monetary damages should not be dismissed on such grounds.

17

The Second Circuit has suggested that a stay of claims seeking money damages may be appropriate, however. *Id.* A court in this district has reasoned that a stay would be appropriate under similar circumstances because "the resolution of the claims for monetary damages still places the Court in the awkward position of having to question the . . . sum and substance" of a plaintiff's constitutional claims, which could be litigated in the ongoing state proceeding. *Torres v. Gaines*, 130 F. Supp. 3d 630, 637 (D. Conn. 2015). This Court agrees with this reasoning, and will therefore dismiss the claims for injunctive and declaratory relief on *Younger* abstention grounds, but stay the claims for monetary relief pending resolution of the state proceedings.[7]

## IV.     CONCLUSION

For the reasons explained in this Ruling, Plaintiff's claims for injunctive and declaratory relief are DISMISSED without prejudice, Plaintiff's claims for monetary damages are STAYED, and the case is administratively CLOSED with leave to reopen after the conclusion of state proceedings. The State Defendants' motions to dismiss is GRANTED IN PART as it relates to their *Younger* arguments, and otherwise DENIED IN PART as moot. The Connection Defendants' motion to dismiss is DENIED as moot. Plaintiff may move to reopen this matter, should *Younger* abstention no longer be appropriate. Plaintiff's motion to seal is DENIED and the Clerk is directed to unseal ECF No. 104.

---

[7] Dismissal, rather than staying, of claims for monetary damages may be appropriate if such claims "plainly fail." *Bukowski v. Spinner*, 709 F. App'x 87, 88 (2d Cir. 2018) (summary order) (declining to stay money damages claim because the plaintiff's claims otherwise failed for reasons of absolute immunity and lack of a state actor); *see also Phoenix of Albany, LLC v. County of Albany*, No. 1:23-CV-311 (TJM/CFH), 2023 WL 7220750, at *4 (N.D.N.Y. Nov. 2, 2023) (collecting cases). Here, the Court cannot find that Plaintiff has clearly failed to state a claim for damages, and therefore finds that a stay, rather than dismissal, is appropriate. *See id.* (staying, rather than dismissing, money damages claim, where the plaintiff had not clearly failed to state a claim for relief for damages).

**SO ORDERED** at Hartford, Connecticut, this 27th day of November, 2023.

        _/s/ Sarala V. Nagala_____
        SARALA V. NAGALA
        UNITED STATES DISTRICT JUDGE